1  JAMES B. CHANIN, SBN 76043
   JULIE M. HOUK, SBN 114968
2  LAW OFFICES OF JAMES B. CHANIN
   3050 Shattuck Avenue
3  Berkeley, California  94705
   (510) 848-4752; FAX (510) 848-5819
4
   JOHN L. BURRIS, SBN 69888
5  7677 Oakport Street, Suite 1120
   Oakland, CA 94621
6  (510) 839-5200; FAX (510) 839-3882          ALAN L. SCHLOSSER, SBN 49957
                                               JULIA HARUMI MASS, SBN 189649
7  RACHEL LEDERMAN, SBN 130192                 MARK SCHLOSBERG, SBN 209144
   NATIONAL LAWYERS GUILD and                  AMERICAN CIVIL LIBERTIES UNION
8  Law Offices of Rachel Lederman              FOUNDATION OF NORTHERN
   and Alexis C. Beach                         CALIFORNIA, INC.
9  558 Capp Street                             1663 Mission Street, Suite 460
   San Francisco, CA 94110                     San Francisco, CA 94103
10 (415) 282-9300; FAX (415) 285-5066          (415) 621-2493; FAX (415) 255-8437

11                                             Attorneys for plaintiffs
                                               (Additional counsel on next page)
12
                       UNITED STATES DISTRICT COURT
13                   NORTHERN DISTRICT OF CALIFORNIA

14 LOCAL 10, INTERNATIONAL LONGSHORE AND  )  Case No.: C 03-2962 TEH (JL)
   WAREHOUSE UNION; BILLY KEPOO; ALLEN    )
15 CHAPMAN; CHRISTOPHER CLAY; SILAS DUNN; )
   WILLIE HAMLIN; ERNEST EVANS; DAVID     )  **THIRD AMENDED COMPLAINT FOR**
16 LOVILLE; LAWRENCE MASSEY; BYRON MOORE, )  **DAMAGES AND INJUNCTIVE AND**
   SR.; JOHN NISHINAGA; WILLOW ROSENTHAL; )  **DECLARATORY RELIEF**
17 JESSICA LAWRENCE; SCOTT FLEMING;       )
   JENNIFER SCHOCKEMOEHL; LAWRENCE        )  **CIVIL RIGHTS CLASS ACTION**
18 MENARD; JEFFREY CROW BOLT; MATTHEW     )
   DODT; REBECCA SONCHEK; TERRENCE        )  **DEMAND FOR JURY TRIAL**
19 ENRIGHT; ARTHUR MARTINEZ; HENRY NORR;  )
   STEVEN SAKALA; SUSAN QUINLAN; TIM      )
20 RIDOLFI; ALICIA GROGAN-BROWN; KENNETH  )
   HAYES; DEAN ROYER; BERNADINE MELLIS;   )
21 THOMAS BECKER; PATRICIA "MAX" RORTY;   )
   JESSE CHRISTENSEN; DIANA BOHN; MILES   )
22 MONTABANO; NICHOLAS FRABASILIO; CYPRUS )
   GONZALEZ; KRISTIN MEEKER; ERIC SHAW;   )
23 VIOLETA FOREGGER; CHELSEA SMITH; AIDAN )
   KOTLER; LESLEY KRUEGER; MARKO          )
24 SAKMANN; JUDITH MIRKINSON; VAAHDAT     )
   SAADAT; CLAY HINSON, MARC DE GIERE,    )
25 DAVID MARTINEZ, LAURA "ARIEL" GLENN,   )
   SARAH KENNEDY, CLIFF CLOSE, KATE       )
26

27

28                    **THIRD AMENDED COMPLAINT - 1**

1   SASSOON, and JACK HEYMAN, individually and on  )
    behalf of all others similarly situated,                     )
2                                                                          )
                                                                           )
3                     Plaintiffs,                                    )
                  vs.                                                   )
4   CITY OF OAKLAND; RICHARD WORD; PATRICK )
    HAW; ROD YEE; E. POULSON; HOWARD A.          )
5   JORDAN; DAVE KOZICKI; T. HOGENMILLER; E. )
    TRACEY; R. GUTIEREZ; A. OERLEAMNS; R.         )
6   HOLMGREN; P. GONZALES; S. KNIGHT; M.         )
    RANDALL, R. CHAN, R. OROZCO, G. BELLUSA, P. )
7   HUPPERT, J. SCOTT,  J. KURZROCK, M. MACK, J. )
    KELLY, OFFICER SOUZA, J. MUSCHI, S.              )
8   JOHNSON, OFFICER KARSABOOM, SGT. G.          )
    TOLLESON; SGT. D. CAMPBELL; OFF. R. MOORE; )
9   OFF. A. STEINBERGER; OFF. F. UU; OFF. B.          )
    WORDEN; OFF J. FUKADA, OFF. J. DOOLITTLE;   )
10  OFF. C. SAUNDERS, OFF. E. ROMANS; OFF. C.     )
    DELROSARIO; individually and in their official     )
11  capacities, and DOES 1-100, inclusive,                 )
                                                                           )
12                    Defendants.                                  )
                                                                           )

13  [Additional counsel]

14  BOBBIE STEIN

15  503 Dolores Street, #201
    San Francisco, CA  94110-1564

16  (415) 255-0301; FAX (510) 601-5780

17  OSHA NEUMANN
    1840 Woolsey Street

18  Berkeley, CA  94703
    (510) 644-2429; FAX (510) 540-4821

19
    Attorneys for plaintiffs

20
    ROB REMAR

21  LEONARD CARDER LLP
    1188 Franklin Street, #201

22  San Francisco, CA  94109
    (415) 447-0403; FAX (415) 771-7010

23  (Counsel only for Local 10, ILWU)

24

25

26

27

28              **THIRD AMENDED COMPLAINT - 2**

# I.  INTRODUCTION

1.     This is a civil rights class action arising from unconstitutional and unlawful actions taken by the Oakland Police Department ("OPD") in response to a peaceful nonviolent antiwar demonstration at the Port of Oakland on April 7, 2003.  The named individual plaintiffs are demonstrators, legal observers, videographers, journalists, and dockworkers who were in the vicinity of the April 7th demonstration when defendants did unlawfully disperse and interfere with the demonstration by, among other things, firing guns which shot wooden dowels and bean bags, throwing "stingball" grenades filled with rubber pellets and tear gas, and striking demonstrators with their motorcycles and clubs.  Defendants' actions were the result of unlawful and unconstitutional policies and practices of the City of Oakland and the OPD.  The named individual plaintiffs seek damages from defendants for the injuries they suffered as a result of the unlawful police conduct at the April 7th demonstration.  In addition, the plaintiffs, on their own behalf and on behalf of a class of persons similarly situated, seek declaratory and injunctive relief to restrain defendants from using excessive, indiscriminate and/or arbitrary force and other unlawful actions to interfere with, disperse and deter future demonstrations, rallies and protest activities in the City of Oakland.

2.     Plaintiffs claim that defendants' actions deprived them of their right to freedom of speech and association, their right to be free from unreasonable seizures and excessive force, and their right to due process and equal protection of the laws, all guaranteed by the United States and California Constitutions, as well as additional state law claims relating to the police actions complained of herein.

# II.  JURISDICTION

3.     This action arises under 42 U.S.C. §1983.  Jurisdiction is based on 28 U.S.C. §1331 and §1343.  The court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

**THIRD AMENDED COMPLAINT - 3**

Plaintiffs have filed administrative claims with the City of Oakland in compliance with California Government Code sections 910 et seq., and the City has not acted upon those claims.

### III.  INTRADISTRICT ASSIGNMENT

4.     The claims alleged herein arose in the City of Oakland, State of California.  Therefore, venue and assignment lies in the United States District Court for the Northern District of California, San Francisco Division or the Oakland Division.

### IV.  THE PARTIES

**A.  Plaintiffs**

5.     Plaintiff LOCAL 10, INTERNATIONAL LONGSHORE AND WAREHOUSE UNION ("LOCAL 10") or ("ILWU") is an unincorporated association and labor union whose members perform longshore work in the Ports of Oakland, San Francisco and Richmond under a collective bargaining agreement known as the Pacific Coast Longshore and Clerks Agreement ("PCL&CA").  Plaintiff LOCAL 10 has, along with individual LOCAL 10 members, economic and legal interests concerning the exercise of police powers and the use of force by defendants in the Port and City of Oakland.  Plaintiff LOCAL 10 sues on its own behalf and in its representative capacity on behalf of its officers and members, including but not limited to, those who reside and/or work in the Port of Oakland and City of Oakland.

6.     The elected officers of Local 10 perform various duties on behalf of the Local 10 membership, including, among other things, assisting and representing Local 10 members with respect to matters of employment at work sites including the container terminal facility operated by Stevedoring Services of America, and the marine container facility operated by American President Lines, Inc. and its wholly owned subsidiary Eagle Marine Services, Inc., both located in the Port of Oakland.  In particular, Local 10 officers show up when picketing or

**THIRD AMENDED COMPLAINT - 4**

demonstrations occur at a work site, and represent Local 10 and its members in arbitration proceedings that are held under the PCL&CA to determine whether Local 10 members should enter and/or work at a facility subject to such picketing or demonstrating.

7.     Plaintiffs BILLY KEPOO, ALLEN CHAPMAN, CHRISTOPHER CLAY, SILAS DUNN, WILLIE HAMLIN, ERNEST EVANS, DAVID LOVILLE, LAWRENCE MASSEY, BYRON MOORE, SR. and JACK HEYMAN are, and at all times mentioned herein were, dockworkers and members of Local 10 who were in the vicinity of the demonstration on April 7, 2003 and were subjected to the unlawful police conduct complained of herein.

8.     Plaintiffs JOHN NISHINAGA, WILLOW ROSENTHAL, JESSICA LAWRENCE, SCOTT FLEMING, JENNIFER SHOCKEMOEHL, LAWRENCE MENARD, JEFFERY CROW BOLT, MATTHEW DODT, REBECCA SONCHEK, TERRENCE ENRIGHT, ARTHUR MARTINEZ, HENRY NORR, STEVEN SAKALA, SUSAN QUINLAN, TIM RIDOLFI, ALICIA GROGAN-BROWN, KENNETH HAYES, DEAN ROYER, BERNADINE MELLIS, THOMAS BECKER, PATRICIA "MAX" RORTY, JESSE CHRISTENSEN, DIANA BOHN, MILES MONTABANO, NICHOLAS FRABASILIO, CYPRUS GONZALEZ, KRISTIN MEEKER, ERIC SHAW, VIOLETA FOREGGER, CHELSEA SMITH, AIDAN KOTLER, LESLEY KRUEGER, MARKO SAKMANN, JUDITH MIRKINSON, VAAHDAT SAADAT, CLAY HINSON, MARC DE GIERE, DAVID MARTINEZ, LAURA "ARIEL" GLENN, SARAH KENNEDY, CLIFF CLOSE and KATE SASSOON (hereafter referred to as "demonstrator plaintiffs"), are individuals who were exercising their rights to freedom of speech and association in the vicinity of the April 7, 2003, demonstration and were subjected to the unlawful police conduct complained of herein.

   **B.  Defendants**

9.     Defendant CITY OF OAKLAND is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

10.     Defendant RICHARD WORD is, and at all times herein mentioned was, the Chief of Police for the CITY OF OAKLAND.  Defendant WORD was the policy-maker for Defendant CITY OF OAKLAND on the matters alleged herein related to the customs, policies, practices, of the OPD, including, but not limited to, customs, policies and practices related to policing of First Amendment activities; the training, supervision, hiring, discipline, assignment and control of police officers; and the management and supervision of OPD.

11.     Defendant PATRICK HAW is, and at all times herein mentioned was, the Deputy Chief in charge of the OPD Patrol Division.  Defendant HAW participated in the planning, supervision and execution of the police conduct complained of herein.

12.     Defendants Captain ROD YEE, Lt. E. POULSON, Lt. HOWARD A. JORDAN, Lt. DAVID KOZICKI, Sgt. T. HOGENMILLER, Sgt. E. TRACEY, Sgt. J. KELLY, SGT. R. OROZCO, Sgt. J. KURZROCK, Sgt. G. TOLLESON, and Sgt. D. CAMPBELL are, and at all times mentioned were, command and/or supervisory employees of OPD who participated in the planning, supervision and execution of the police conduct complained of herein.

13.     Defendants Officers R. GUTIEREZ, A. OERLEAMNS, R. HOLMGREN, P. GONZALES, S. KNIGHT, M. RANDALL, R. CHAN, S. JOHNSON, KARSABOOM, P. HUPPERT, G. BELLUSA, J. SCOTT, M. MACK, SOUZA, J. MUSCHI, R. MOORE, A. STEINBERGER, F. UU, B. WORDEN, J. FUKADA, J. DOOLITTLE, C. SAUNDERS, E. ROMANS, and C. DELROSARIO, are, and at all times mentioned were, officers of OPD who participated in the execution of the police conduct complained of herein.

14.     All of the above individual defendants are sued in their individual and official capacities.

15.     Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as

**THIRD AMENDED COMPLAINT - 6**

DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and therefore allege that each of the Doe defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, violation of constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission.  Plaintiffs will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

16.     Each of the defendants, including defendants DOES 1 through 100, caused, and is responsible for, the below-described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to plaintiffs' rights to initiate and maintain adequate training and supervision; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

17.     In doing the acts alleged herein, defendants, and each of them, acted within the course and scope of their employment for the CITY OF OAKLAND.

18.     In doing the acts and/or omissions alleged herein, defendants, and each of them, acted under color of authority and/or under color of law.

19.     In doing the acts and/or omissions alleged herein, defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other defendants.

**THIRD AMENDED COMPLAINT - 7**

**V.  CLASS ACTION ALLEGATIONS**

20.     Plaintiffs JOHN NISHINAGA, WILLOW ROSENTHAL, JESSICA LAWRENCE, SCOTT FLEMING, JENNIFER SCHOCKEMOEHL, LAWRENCE MENARD, JEFFREY CROW BOLT, MATTHEW DODT, REBECCA SONCHEK, TERRENCE ENRIGHT, ARTHUR MARTINEZ, HENRY NORR, STEVEN SAKALA, SUSAN QUINLAN, TIM RIDOLFI, ALICIA GROGAN-BROWN, KENNETH HAYES, DEAN ROYER, BERNADINE MELLIS, THOMAS BECKER, PATRICIA "MAX" RORTY, JESSE CHRISTENSEN, DIANA BOHN, MILES MONTABANO, NICHOLAS FRABASILIO, CYPRUS GONZALEZ, KRISTIN MEEKER, ERIC SHAW, VIOLETA FOREGGER, CHELSEA SMITH, AIDAN KOTLER, LESLEY KRUEGER, MARKO SAKMANN, JUDITH MIRKINSON, VAAHDAT SAADAT, CLAY HINSON, MARC DE GIERE, DAVID MARTINEZ, LAURA "ARIEL" GLENN, SARAH KENNEDY, CLIFF CLOSE and KATE SASSOON, the demonstrator plaintiffs, seek class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(2) to pursue injunctive and declaratory relief on behalf of themselves and all persons similarly situated.  The proposed class consists of all persons who attended the April 7th demonstration, and/or who may attend in the future demonstrations, rallies and protests in the City of Oakland, and, as a result, have been, and/or hereafter may be, subjected to defendants' policy and practice of using excessive, indiscriminate and/or arbitrary force to disperse or control persons attending demonstrations, rallies or protests as complained of herein.

21.     This case satisfies the prerequisites of a Rule 23(b)(2) class action.

22.     The class is so numerous that joinder of all members is impracticable.  Plaintiffs do not know the identities or exact number of all class members.  Plaintiffs are informed and believe and thereon allege that in excess of 500 persons were present at, or in the vicinity of, said demonstration and were subjected to and/or threatened by the unlawful and unconstitutional

**THIRD AMENDED COMPLAINT - 8**

actions of the OPD.

23.     There are questions of law and fact common to all members of the class, because all class members have been, or may be in the future, adversely affected by the challenged actions of the defendants. Common questions of law and fact include, but are not limited to: whether OPD officers were justified in using force on April 7, 2003, and if so, what degree of force was constitutionally reasonable; whether the OPD and its officers have a policy or practice of using excessive force to interfere with nonviolent expressive activities; and whether the City, the OPD and its supervisors fail to properly train and supervise officers in the use of force during demonstrations and rallies.

24.     The claims of the named demonstrator plaintiffs are typical of the claims of the class. The claims of the class members arise from the same customs, policies or practices that have resulted in damages to the class representatives and are based on the same legal theories.

25.     The representative plaintiffs will fairly and adequately protect the interests of the class because they are, and were, subject to the policies, customs and practices complained of herein, and have no interests antagonistic to other members of the class.  In addition, plaintiffs' counsel are experienced in litigating federal civil rights cases and class actions, including federal civil rights actions against the City of Oakland and the OPD.

26.     The defendants have acted and refused to act on grounds generally applicable to the class, and injunctive and declaratory relief for the class as a whole is appropriate.

27.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or incompatible standards of conduct for the defendants, thereby making a class action the superior method of adjudicating the controversy.

## VI.  STATEMENT OF FACTS

**THIRD AMENDED COMPLAINT - 9**

28.     In late March, 2003, the United States government invaded Iraq.  Thousands of people participated in demonstrations and rallies in the San Francisco Bay Area to voice opposition to this war.

29.     An antiwar demonstration was planned for April 7, 2003, at the Port of Oakland.  The demonstration was intended to focus on American President Lines ("APL"), which was under contract with the United States military to ship weapons, and Stevedore Services of America ("SSA"), to which the U.S. government had just granted the contract to operate Iraq's main port of Umm Qasr.  Some participants planned to peacefully and nonviolently encourage workers and trucks to not enter the marine container facilities by setting up picket lines at the entrances to the facilities and talking to truck drivers, while others planned to peacefully and lawfully express their viewpoint against the war in the vicinity with signs, banners and verbal opposition.  Still others intended to observe and/or document the demonstration and police response, including a number of legal observers, journalists, and independent videographers and photographers.

30.     On information and belief, prior to this demonstration, defendants gathered, maintained and disseminated documents, information and intelligence concerning the demonstration, including, but not limited to, information about the constitutionally protected speech and associational activities of individuals and organizations involved in antiwar activities, including LOCAL 10 and its officers and members, and the demonstrators.  Such documents and information gathered and maintained by the OPD included an anti-war internal newsletter of LOCAL 10, and email messages to an ILWU group listserv concerning union support for anti-war protest activities among other union business matters.  Defendants' actions in gathering, maintaining and disseminating documents, information and intelligence concerning the constitutionally protected speech and associational activities of plaintiffs was overbroad, unnecessary and unjustified by any legitimate law enforcement purpose.

**THIRD AMENDED COMPLAINT - 10**

31.     On information and belief, on or before April 7, 2003, defendants WORD, HAW, YEE, and/or other commanders and supervisory officials of OPD and the CITY OF OAKLAND planned that the police would bring an arsenal of weapons, including projectile and chemical weapons, which the OPD and its officers knew would likely cause serious bodily injury to demonstrators.  The OPD and its officers nevertheless planned to quickly deploy these weapons to clear demonstrators from the vicinity of the marine container facilities.

32.     At various times on and before April 7, 2003, representatives of the OPD and CITY OF OAKLAND held meetings and discussions with non-ILWU employees and representatives of APL, SSA, and the Pacific Maritime Association ("PMA"), regarding the police response to the anticipated anti-war demonstration.

33.     On April 7, 2003, several hundred demonstrators gathered at the Port in the early morning hours.  Most arrived on BART or parked their vehicles near the West Oakland BART station, and walked or were shuttled to the Port.  Some set up picket lines at the gate entrances of the APL and SSA Terminals, walking in circles carrying signs.  Many others, including demonstrators, legal observers, videographers, journalists and others, stood to the side of the road, on the shoulder or along the railroad tracks.

34.     At or around 6:00 a.m. on Monday, April 7, 2003, in excess of 20 LOCAL 10 members arrived to report to work at the gate entrances of the APL Terminal in the Port of Oakland.  Pursuant to established contract procedures under the PCL&CA, the LOCAL 10 members, accompanied by several LOCAL 10 officers, "stood by" outside the gate entrances of the SSA Terminal and the APL Terminal to await the holding of a labor arbitration regarding whether LOCAL 10 members should or should not enter the SSA Terminal or the APL Terminal in the face of the public anti-war demonstration as well as the mass police presence.  Most, if not all, of the LOCAL 10 members and officers at the scene congregated as a group, physically separate

**THIRD AMENDED COMPLAINT - 11**

from the demonstrators and the police at the gate entrances of the SSA Terminal and the APL

Terminal.  At all material times, the LOCAL 10 officers and members acted peacefully and

lawfully.

35.    Plaintiffs are informed and believe that at approximately 7:15 a.m., the police purported

to give a dispersal order to the demonstrators at one of the APL gates, but this order was

inaudible to most and unclear in informing the demonstrators what the police wanted them to do.

The demonstrators attempted to comply with the order and/or with police movements by clearing

away from the gates, and traffic proceeded through.  The police formed skirmish lines which

blocked the demonstrators and observers from the direct route back to the West Oakland BART

station and parking lot and refused to let them through.

36.    After the demonstrators had cleared away from the gate, at approximately 7:30 a.m.,

without provocation or warning, OPD police officers, including defendants E. TRACEY, R.

GUTIEREZ, A. OERLEAMNS, R. HOLMGREN, P. GONZALES, and S. KNIGHT, began

throwing "sting ball" grenades filled with rubber pellets and tear gas, and firing guns which shot

multiple wooden dowels and "flexible baton rounds" (bean bags), at the peaceful demonstrators

and observers.  Also, OPD officers ran motorcycles into the peaceful, fleeing demonstrators and

observers, and hit them with clubs.  OPD officers continued chasing and shooting at the

retreating crowd north on Middle Harbor Road toward the SSA facilities for some minutes.

37.    The police also purported to give an order to disperse to the peaceful picketers at the SSA

gate entrances.  Again, this order was inaudible to many and unclear as to what the demonstrators

and observers were supposed to do.  OPD officers, including defendants E. TRACEY, R.

GUTIEREZ, A. OERLEAMNS, R. HOLMGREN, P. GONZALES, and S. KNIGHT, opened fire

at the peaceful demonstrators and observers, and at the LOCAL 10 members and officers,

shooting and striking them with projectiles.  The demonstrators and others attempted to leave the

**THIRD AMENDED COMPLAINT - 12**

area by walking up Maritime Road, the only avenue not blocked off by the police.  Defendants pursued them, charging with motorcycles, throwing grenades and shooting wooden dowels directly at the backs and heads of fleeing demonstrators and others.

38.     A number of people gathered at the intersection of Maritime and 7th Streets.  Some were peacefully picketing, some merely observing, while others attended to wounds or tried to determine how to get home.  At approximately 9:00 a.m., OPD officers, including defendants E. TRACEY, R. GUTIEREZ, A. OERLEAMNS, R. HOLMGREN, P. GONZALES, and S. KNIGHT, approached, purported to give a dispersal order, again inaudible to many, and proceeded to open fire directly at the picketers and others in the vicinity.  This was approximately one and a half hours and more than a mile in distance from when and where the projectiles were first fired.

39.     OPD officers continued to herd the terrified demonstrators and observers down 7th Street toward the BART station with their motorcycles.

40.     Throughout the period from approximately 7:30 a.m. to approximately 9:00 a.m., additional persons arrived in the vicinity to participate in or observe the antiwar demonstration. OPD officers, including defendants E. TRACEY, R. GUTIEREZ, A. OERLEAMNS, R. HOLMGREN, P. GONZALES, and S. KNIGHT, shot and threw projectiles at, and ran motorcycles into, these persons as well, without provocation or warning, and regardless of whether these persons had been in the area when any dispersal orders were given.

41.     In protest of defendants' use of excessive force at the Port demonstration and the Iraq war, some of the demonstrators walked as a group from the BART area to the Oakland Federal Building.  OPD officers continued to pursue them in an intimidating fashion, periodically hitting demonstrators with motorcycles and injuring them.

42.     OPD officers, including defendants E. TRACEY, R. GUTIEREZ, A. OERLEAMNS, R.

HOLMGREN, P. GONZALES, and S. KNIGHT, aimed and fired projectiles such as wooden dowels, "flexible batons" (bean bags), and sting ball grenades filled with rubber pellets and tear gas, directly at plaintiffs' heads, torsos, hands, arms and legs, in some cases from close range, despite their knowledge that such use of the projectile weapons constituted potentially deadly force, and contrary to the manufacturers' warnings and instructions, including, but not limited to, the warning prominently printed on each Federal Laboratories "Multiple Wood Baton Shell" used by defendants on April 7, 2003: "Do not fire directly at persons as serious injury or death may result.  Ricochet baton shell approximately 3 meters in front of persons."

43.     At no point did defendants give plaintiffs a clear order directing what they should do or where they should go to avoid being shot or otherwise subjected to force.

44.     There was no probable cause or reasonable suspicion that the plaintiffs or any of the demonstrators, observers or dockworkers, posed an immediate or credible threat of injury to the police or any other person, and there were no facts that justified the force that the OPD and its officers directed against the plaintiffs.

45.     There was no probable or reasonable cause to believe that plaintiffs KENNEDY, GLENN, SASOON, HEYMAN and/or CLOSE committed any crime.  Nevertheless, said plaintiffs, and each of them, were subjected to arrest and imprisonment without reasonable or probable cause to believe that they committed any crimes by members of the OPD that included, but may not be limited to, defendants R. CHAN, P. HUPPERT, G. BELLUSA, S. JOHNSON, OFFICER KARSABOOM, J. SCOTT, J. KURZROCK, M. MACK, J. MUSCHI, J. KELLY, R. OROZCO and/or OFFICER SOUZA.

46.     Plaintiffs are informed and believe that defendants directed force against the demonstrators and/or arrested and imprisoned certain of the demonstrator plaintiffs without probable cause for the purpose of interfering with their First Amendment rights, and that

**THIRD AMENDED COMPLAINT - 14**

defendants' use of force and/or arrests was/were motivated by the political content, message and viewpoint of the demonstrators, or by defendants' perceptions of such.

47.     Plaintiffs are informed and believe that defendants deliberately singled out and aimed their weapons and otherwise directed force at legal observers; perceived demonstration leaders such as persons who carried bullhorns; videographers and journalists who were holding camera equipment.  Plaintiffs are informed and believe that defendants' use of force against these plaintiffs was motivated and influenced by the political content and viewpoint of their message, and/or their acts of documenting the police conduct and/or criticism of the police, and/or defendants' perceptions of one or more of these characteristics.

48.     Plaintiffs are informed and believe that defendants deliberately singled out and aimed their weapons and otherwise directed force at and engaged in the other conduct described herein against plaintiff LOCAL 10 and its officers and members because of hostility, animus and discrimination against the ILWU as an organization and against members and officers affiliated with the ILWU.

49.     Plaintiffs are informed and believe that a total of at least 50 people were physically injured by the police actions complained of herein.

## VIII.  ALLEGATIONS CONCERNING INDIVIDUAL PLAINTIFFS

50.     On April 7, 2003, plaintiff BILLY KEPOO was a member of Local 10 of the ILWU and was "standing by" with other union members to await an arbitrator's decision as to whether they could cross the demonstrators' picket line and/or to be escorted into work by the police.  The defendants, without legal justification or reasonable cause, caused him to be shot in the hand with a projectile, fracturing his thumb.

51.     On April 7, 2003, while plaintiff ALLEN CHAPMAN, a member of Local 10 of the ILWU, was  "standing by" with other union members, the defendants, without legal justification

**THIRD AMENDED COMPLAINT - 15**

or reasonable cause, caused him to be shot with projectiles in the lower left back, inner left thigh, and on the left side.

52.     On April 7, 2003, while plaintiff CHRISTOPHER CLAY, a member of Local 10 of the ILWU, was "standing by" with other union members, the defendants, without legal justification or reasonable cause, caused him to be shot with projectiles on the right hamstring and on his back near the right shoulder.

53.     On April 7, 2003, while plaintiff SILAS DUNN, a member of Local 10 of the ILWU, was "standing by" with other union members, the defendants, without legal justification or reasonable cause, caused him to be shot with projectiles, including in the right lower abdomen, left side abdomen, in the arm and in the back of the leg.

54.     On April 7, 2003, while plaintiff WILLIE HAMLIN, a member of Local 10 of the ILWU, was "standing by" with other union members, the defendants, without legal justification or reasonable cause, caused him to be shot with a projectile on the back of his right hamstring area.

55.     On April 7, 2003, while plaintiff ERNEST EVANS, a member of Local 10 of the ILWU, was "standing by" with other union members, the defendants, without legal justification or reasonable cause, caused him to be shot with a projectile in the back.

56.     On April 7, 2003, while plaintiff DAVID LOVILLE, a member of Local 10 of the ILWU, was "standing by" with other union members, the defendants, without legal justification or reasonable cause, caused him to be shot with a projectile in the right buttock and damaged his automobile with a concussion grenade.

57.     On April 7, 2003, while plaintiff LAWRENCE MASSEY, a member of Local 10 of the ILWU, was "standing by" with other union members, the defendants, without legal justification or reasonable cause, caused him to be shot with projectiles in the back and buttocks.

58.     On April 7, 2003, plaintiff BYRON MOORE, SR., a member of Local 10 of the ILWU,

was "standing by" with other union members.  When plaintiff MOORE realized the police were shooting in the vicinity, he attempted to go to his car with the intention of immediately leaving the area.  As plaintiff MOORE was attempting to go to his car, the defendants, without legal justification or reasonable cause, caused him to be shot with a projectile in the back near his right shoulder and damaged his vehicle with a projectile.

59.     On April 7, 2003, plaintiff JACK HEYMAN, a business agent for Local 10 of the ILWU, was attempting to assist members of LOCAL 10 in the vicinity of the demonstration, when defendants, without legal justification or reasonable cause, caused him to be subjected to excessive force, including, but not limited to, knocking him to down and shoving his head into the ground.  Defendants also caused plaintiff HEYMAN to be arrested and imprisoned without reasonable or probable cause to believe that he committed any crime. The criminal charges filed against plaintiff HEYMAN following this incident were dismissed on or about April 22, 2004.

60.     On April 7, 2003, plaintiff JOHN NISHINAGA was attending the April 7th demonstration when defendants, without legal justification or reasonable cause, caused him to be struck by a motorcycle and subsequently shot him with a projectile fired directly at him, fracturing his hand.

61.     On April 7, 2003, plaintiff WILLOW ROSENTHAL was attending the demonstration when defendants, without legal justification or reasonable cause, caused her to be shot in the leg as she fled, resulting in an injury which has necessitated surgery and will likely leave permanent scarring and disfigurement.

62.     On April 7, 2003, plaintiff JESSICA LAWRENCE was attending and videotaping the demonstration when defendants, without legal justification or reasonable cause, caused her to be shot in the thigh with a wooden dowel.

63.    On April 7, 2003, plaintiff SCOTT P. FLEMING was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be shot five times in the back, shoulder, and under his arm with wooden dowels fired directly at him as he fled.

64.    On April 7, 2003, plaintiff JENNIFER SCHOCKEMOEHL was attending the demonstration when defendants, without legal justification or reasonable cause, caused her to be shot in the back with a projectile.

65.    On April 7, 2003, plaintiff JEFFERY CROW BOLT was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be repeatedly struck and run over by motorcycles and to be repeatedly shot with projectiles, which hit him in numerous places including the arm, buttocks and upper body.

66.    On April 7, 2003, plaintiff MATTHEW DODT was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be repeatedly struck by a motorcycle, and, as he was attempting to leave the area, caused him to be shot with projectiles which struck him in the torso and hand.

67.    On April 7, 2003, plaintiff REBECCA SONCHEK was attending the demonstration and walking with other demonstrators on the sidewalk toward the Oakland Federal Building, when defendants, without legal justification or reasonable cause, caused her to be struck twice with a police club.

68.    On April 7, 2003, plaintiff TERRENCE ENRIGHT was attending and videotaping the demonstration when defendants, without legal justification or reasonable cause, caused him to be struck with a police club and shot in the chest and leg with projectiles.

**THIRD AMENDED COMPLAINT - 18**

69.     On April 7, 2003, plaintiff ARTHUR MARTINEZ was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be shot in the leg with a projectile.

70.     On April 7, 2003, plaintiff LAWRENCE MENARD was attending the demonstration when defendants, without legal justification or reasonable cause, caused a "sting ball" grenade or similar object to explode with deafening noise and released tear gas and/or other chemical agents in close proximity to his head.

71.     On April 7, 2003, plaintiff HENRY NORR was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be shot with a projectile in the leg.

72.     On April 7, 2003, plaintiff STEVEN SAKALA was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be choked, shot with projectiles in the back, and exposed to tear gas and/or another chemical agents.

73.     On April 7, 2003, plaintiff SUSAN QUINLAN was attending the demonstration when defendants, without legal justification or reasonable cause, caused her to be shot with projectiles in the arm and leg, and exposed to tear gas or other chemical agent.

74.     On April 7, 2003, Plaintiff TIM RIDOLFI was attending and acting as a clearly identified legal observer at the demonstration, when defendants, without legal justification or reasonable cause, caused him to be shot with a projectile which struck him in the head.

75.     On April 7, 2003, plaintiff ALICIA GROGAN-BROWN was attending the demonstration when defendants, without legal justification or reasonable cause, caused her to be shot in the arm with a projectile.

**THIRD AMENDED COMPLAINT - 19**

76.     On April 7, 2003, plaintiff KENNETH HAYES was attending the demonstration when, as he was attempting to leave the area, defendants, without legal justification or reasonable cause, caused him to be shot in the foot with a projectile.

77.     On April 7, 2003, plaintiff DEAN ROYER was attending and acting as a clearly identified legal observer at the demonstration, when, as he was attempting to leave the area, defendants, without legal justification or reasonable cause, caused him to be shot in the leg with a projectile.

78.     On April 7, 2003, plaintiff BERNADINE MELLIS was attending the demonstration when, as she was attempting to leave the area, defendants, without legal justification or reasonable cause, caused her to be struck in the back of her shoulder by a projectile.

79.     On April 7, 2003, plaintiff THOMAS BECKER was attending the demonstration when, as plaintiff BECKER was attempting to flee, defendants, without legal justification or reasonable cause, caused him to be shot in the leg with a projectile.

80.     On April 7, 2003, plaintiff PATRICIA "MAX" RORTY was attending and acting as a clearly identified legal observer at the demonstration, when, as she was walking on the side of the road, defendants, including defendant M. RANDALL, without legal justification or reasonable cause, caused her to be struck with a motorcycle, running over her foot.

81.     On April 7, 2003, plaintiff JESSE CHRISTENSEN was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be struck repeatedly in the chest and other parts of his body with projectiles.

82.     On April 7, 2003, plaintiff DIANA BOHN was attending the demonstration when, as she was attempting to leave the area, defendants, without legal justification or reasonable cause, caused her to be struck in the back with a projectile.

**THIRD AMENDED COMPLAINT - 20**

83.     On April 7, 2003, plaintiff MILES MONTABANO was attending and acting as a videographer in the vicinity of the demonstration when, as he was videotaping a woman being shot, defendants, including the officer who had just shot the woman he was videotaping, without legal justification or reasonable cause, caused plaintiff MONTABANO to be shot with a projectile, which struck him in the arm he was using to hold the video camera.

84.     On April 7, 2003, plaintiff NICHOLAS FRABASILIO was attending the demonstration when, as he was attempting to flee, defendants, without legal justification or reasonable cause, caused a "sting ball" grenade or other projectile containing tear gas or other chemical agent to explode at his feet, enveloping him in a cloud of such gas.

85.     On April 7, 2003, plaintiff CYPRUS GONZALEZ was attending the demonstration when, as he was attempting to flee, defendants, without legal justification or reasonable cause, caused him to be struck in the back by a projectile.

86.     On April 7, 2003, plaintiff KRISTIN MEEKER was attending the demonstration when, as she was attempting to leave the area, defendants, without legal justification or reasonable cause, caused her be struck repeatedly by a motorcycle.

87.     On April 7, 2003, plaintiff ERIC SHAW was attending the demonstration and attempting to walk away when defendants, without legal justification or reasonable cause, caused him to be struck with a projectile in the calf.

88.     On April 7, 2003, plaintiff VIOLETA FOREGGER was attending the demonstration and attempting to walk away when defendants, without legal justification or reasonable cause, caused her to be struck with a projectile in the buttock.

89.     On April 7, 2003, plaintiff CHELSEA SMITH was attending the demonstration and attempting to walk away when she was shot in the leg with a projectile without legal justification or reasonable cause.

**THIRD AMENDED COMPLAINT - 21**

90.    On April 7, 2003, plaintiff AIDAN KOTLER was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be exposed to tear gas or other chemical agent, and to be struck twice with projectiles. The second impact, in plaintiff's back as he ran away, destroyed personal property in plaintiff's backpack.

91.    On April 7, 2003, plaintiff LESLEY KRUEGER was attending the demonstration when defendants, without legal justification or reasonable cause, caused her to be struck in the back right shoulder area with a grenade or other projectile.

92.    On April 7, 2003, plaintiff MARKO SAKMANN was attending and acting as a clearly identified legal observer at the demonstration when defendants, without legal justification or reasonable cause, caused him to be shot in the back of the head with a projectile.  A few minutes later, a sting ball grenade or similar weapon exploded with deafening noise near plaintiff SAKMANN, resulting in further injuries and damages.

93.    On April 7, 2003, plaintiff JUDITH MIRKINSON was attending the demonstration and attempting to act as a liaison between demonstrators and police.  She was trying to leave the area when defendants, without legal justification or reasonable cause, caused her to be struck by projectiles.

94.    On April 7, 2003, plaintiff VAAHDAT SAADAT was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be shot in the right buttock with a projectile.

95.    On April 7, 2003, plaintiff CLAY HINSON was attending the demonstration when he and his bicycle were struck by an Oakland Police motorcycle.  Subsequently, defendants, without legal justification or reasonable cause, caused plaintiff HINSON to be shot in the chest, back and leg with projectiles.

96.     On April 7, 2003, plaintiff MARC DE GIERE was attending and acting as a videographer in the vicinity of the demonstration when defendants, without legal justification or reasonable cause, caused him to be shot with projectiles.

97.     On April 7, 2003, plaintiff DAVID MARTINEZ was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be shot with projectiles.

98.     On April 7, 2003, plaintiff LAURA "ARIEL" GLENN was attending the demonstration as a clearly identified legal observer when defendants, without legal justification or reasonable cause, caused her to be arrested and imprisoned without reasonable or probable cause, and subjected to excessive force which included placing her in handcuffs that caused pain and injury to her wrists.  The criminal charges filed against plaintiff GLENN following this incident were dismissed on or about April 22, 2004.

99.     On April 7, 2003, plaintiff SARAH KENNEDY was attending the demonstration as a clearly identified legal observer when defendants, without legal justification or reasonable cause, caused her to be shot with a projectile, arrested and imprisoned without reasonable or probable cause to believe that she committed any crime.  The criminal charges filed  against plaintiff KENNEDY following this incident were dismissed on or about April 22, 2004.

100.    On April 7, 2003, plaintiff CLIFF CLOSE was attending the demonstration when defendants, without legal justification or reasonable cause, caused him to be subjected to excessive force, including, but not limited to, being struck with a baton, thrown into a fence, knocked to the ground, kneed in the back, and had his head and face shoved into the ground. Defendants also caused plaintiff CLOSE to be arrested and imprisoned without reasonable or probable cause to believe that he committed any crime.  The criminal charges filed against plaintiff CLOSE following this incident were dismissed on or about April 22, 2004.

**THIRD AMENDED COMPLAINT - 23**

101.   On April 7, 2003, plaintiff KATE SASSOON was attending the demonstration when defendants, without legal justification or reasonable cause, caused her to be subjected to excessive force, including, but not limited to, being knocked to the ground, having her face shoved in the gravel and having her clothing torn.  Defendants also caused plaintiff SASSOON to be arrested and imprisoned without reasonable or probable cause to believe that she committed any crime.  The criminal charges filed against plaintiff SASSOON following this incident were dismissed on or about April 22, 2004.

## IX.  REQUISITES FOR RELIEF

102.   Plaintiffs are informed and believe that the violations of the plaintiffs' constitutional and lawful rights complained of herein were caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of the defendant CITY OF OAKLAND, including defendants WORD, HAW and other supervisory officials of the OPD and the City of Oakland, which encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein.  Said customs, policies and practices include, but are not limited to the use of excessive and/or arbitrary force to disperse and control demonstrators and others involved in expressive activities; the failure to maintain adequate policies, and to adequately train, supervise and control OPD officers, concerning  the policing of demonstrations and other expressive activities with respect to crowd control, crowd dispersal and the constitutional limitations on the use of force; and the failure to investigate and impose discipline on OPD officers involved in the unconstitutional and unlawful actions complained of herein, and/or to adopt other remedial measures and policies to insure that  such violations of legal rights would not recur.

103.   As a direct and proximate result of the conduct of defendants described herein, the named individual plaintiffs have been denied their constitutional, statutory and legal rights as stated

below, and have suffered, continue to suffer and will in the future suffer general and special

damages, including but not limited to, mental and emotional distress, physical injuries and bodily

harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety, medical and related

expenses, and lost earnings in an amount according to proof.

104.   Defendants' acts were willful, wanton, malicious and oppressive and done with conscious

disregard and deliberate indifference for plaintiffs' rights.

105.   Defendants' policies, practices, customs, conduct and acts alleged herein have resulted

and will continue to result in irreparable injury to plaintiffs, including but not limited to

violations of their constitutional and statutory rights.  Plaintiffs have no plain, adequate or

complete remedy at law to address the wrongs described herein.  The demonstrator plaintiffs and

class members intend in the future to exercise their constitutional rights of freedom of speech and

association by engaging in demonstrations and expressive activities in the vicinity of the Port of

Oakland and in other public places in the City of Oakland.  Defendants' conduct described herein

has created fear, anxiety and uncertainty among plaintiffs with respect to their exercise now and

in the future of these constitutional rights, and with respect to their physical security and safety.

Defendants' conduct described herein has also created fear, anxiety and uncertainty among

members and officers of LOCAL 10 with respect to their exercise of their associational and

organizational activities and with the right to work and move freely about the public streets,

without being subject to excessive force by the OPD, and with their physical security and safety.

Plaintiffs therefore seek injunctive relief from this court, to ensure that plaintiffs and persons

similarly situated will not suffer violations of their rights from defendants' illegal and

unconstitutional policies, customs and practices as described herein.

106.   An actual controversy exists between plaintiffs and defendants in that plaintiffs contend

that the policies, practices and conduct of defendants alleged herein are unlawful and

**THIRD AMENDED COMPLAINT - 25**

unconstitutional, whereas plaintiffs are informed and believe that defendants contend that said policies, practices and conduct are lawful and constitutional.  Plaintiffs seek a declaration of rights with respect to this controversy.

## X.CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violation Of First And Fourteenth Amendments To The United States Constitution

### (42 U.S.C.  1983)

107.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 106 of this complaint.

108.    Defendants' above-described conduct violated plaintiffs' rights to freedom of speech and association under the First and Fourteenth Amendments to the United States Constitution.

### SECOND CLAIM FOR RELIEF

### Violation Of Fourth And Fourteenth Amendments To United States Constitution

### (42 U.S.C.  1983)

109.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 108 of this complaint.

110.    Defendants' above-described conduct violated plaintiffs' rights to be free from unreasonable seizures and excessive and/or arbitrary force and/or arrest and/or imprisonment without reasonable or probable cause under the Fourth and Fourteenth Amendments to the United States Constitution.

### THIRD CLAIM FOR RELIEF

THIRD AMENDED COMPLAINT - 26

**Violation Of Fourteenth Amendment To United States Constitution**

**(42 U.S.C.  1983)**

111.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 110 of this

complaint.

112.   Defendants' above-described conduct violated plaintiffs' right to not be deprived of

liberty without due process of law under the Fourteenth Amendment to the United States

Constitution.

**FOURTH CLAIM FOR RELIEF**

**Violation Of Fourteenth Amendment To United States Constitution**

**(42 U.S.C.  1983)**

113.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 112 of this

complaint.

114.   Defendants' above-described conduct violated plaintiffs' rights to equal protection of the

laws under the Fourteenth Amendment to the United States Constitution.

**FIFTH CLAIM FOR RELIEF**

**Violation of California Constitution, Article I,  2 and 3**

115.   Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by

reference paragraphs 1 through 114 of this complaint.

116.   Defendants' above-described conduct violated plaintiffs' rights to freedom of speech and

association, and to petition the government for redress of grievances, under article I, sections 2

and 3 of the California Constitution.

**THIRD AMENDED COMPLAINT - 27**

**SIXTH CLAIM FOR RELIEF**

**Violation of California Constitution, Article I,  13**

117.   Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 116 of this complaint.

118.   Defendants' above-described conduct violated plaintiffs' right to be free from unreasonable seizures and excessive and/or arbitrary force and/or arrest and/or imprisonment without reasonable or probable cause under article I, section 13 of the California Constitution.

**SEVENTH CLAIM FOR RELIEF**

**Violation of California Constitution, Article 1,  7(A)**

119.   Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 118 of this complaint.

120.   Defendants' above-described conduct violated plaintiffs' right not to be deprived of liberty without due process of law under article 1, section 7(a) of the California Constitution.

**EIGHTH CLAIM FOR RELIEF**

**Violation of California Constitution, Article 1,  7(A)**

121.   Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 120 of this complaint.

122.   Defendants' above-described conduct violated plaintiffs' right to equal protection of the laws under article 1, section 7(a) of the California Constitution.

**NINTH CLAIM FOR RELIEF**

**Violation of California Constitution, Article 1,  1**

123.    Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 122 of this complaint.

124.    Defendants' above-described conduct violated plaintiffs' right to informational privacy under article I, section 1 of the California Constitution.

**TENTH CLAIM FOR RELIEF**

**Violation of California Civil Code □ 51.7**

125.    Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 124 of this complaint.

126.    Defendants' above-described conduct violated plaintiffs' right to be free from violence and intimidation by threat of violence because of their actual or perceived political affiliation and/or viewpoint and/or position in a labor dispute, in violation of California Civil Code section 51.7.

**ELEVENTH CLAIM FOR RELIEF**

**Violation of California Civil Code □ 52.1**

127.    Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 126 of this complaint.

128.    Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code section 52.1.

**TWELFTH CLAIM FOR RELIEF**

**THIRD AMENDED COMPLAINT - 29**

**Assault And Battery**

129.   Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 128 of this complaint.

130.   Defendants' above-described conduct constituted assault and battery on the named individual plaintiffs.

**THIRTEENTH CLAIM FOR RELIEF**

**Intentional Infliction Of Emotional Distress**

131.   Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 130 of this complaint.

132.   Defendants' above-described conduct was extreme, unreasonable and outrageous.

133.   In engaging in the above-described conduct, defendants intentionally ignored or recklessly disregarded the foreseeable risk that the named individual plaintiffs would suffer extreme emotional distress as a result of defendants' conduct.

**FOURTEENTH CLAIM FOR RELIEF**

**Negligence**

134.   Plaintiffs, with the exception of DAVID MARTINEZ, re-allege and incorporate by reference paragraphs 1 through 133 of this complaint.

135.   Defendants have a duty of care to plaintiffs to ensure that defendants did not cause unnecessary or unjustified harm to the named individual plaintiffs and a duty of care to hire, train, supervise and discipline OPD officers so as to not cause harm to plaintiffs and to prevent violations of plaintiffs' constitutional, statutory and common law rights.

136.   The above-described acts and omissions of defendants breached the duty of care

defendants owed to the named individual plaintiffs.

## FIFTEENTH CLAIM FOR RELIEF

### False Arrest and Imprisonment

137.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 136 of this complaint.

138.   Plaintiffs LAURA "ARIEL" GLENN, SARAH KENNEDY, CLIFF CLOSE, KATE SASSOON and JACK HEYMAN were arrested and imprisoned without reasonable or probable cause to believe that they committed any crime.  The criminal charges filed against them following this incident were dismissed on or about April 22, 2004.

## XI.  PRAYER

**WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as follows:**

1. For an order certifying the class defined herein pursuant to Federal Rules of Civil Procedure Rule 23(b)(2);

2. For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

3. For a declaratory judgment that defendants' conduct complained of herein was a violation of plaintiffs' rights under the Constitution and laws of the United States and California;

4. For the individual named plaintiffs, general and compensatory damages to be determined according to proof;

5. For the individual named plaintiffs, special damages, including but not limited to medical and related expenses, wage loss and/or damage to career; interruption and/or interference

THIRD AMENDED COMPLAINT - 31

with school and/or internship and/or similar pursuits;

6.  For punitive and exemplary damages in amounts to be determined according to proof as to the individual defendants;

7.  For an award of statutory damages and penalties pursuant to Cal. Civil Code section 52(b) to be determined according to proof;

8.  For attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code section 52(b) and section 52.1(h), and California Code of Civil Procedure section 1021.5;

9.  For costs of suit;

10.  For pre- and post-judgment interest as permitted by law;

11.  For such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial.

DATED: September 16, 2004

By     /s/ James B. Chanin

James B. Chanin

Attorneys for Plaintiffs

**THIRD AMENDED COMPLAINT - 32**

1

**PROOF OF SERVICE**

2

3

I am a citizen of the United States and am employed in the City and County of San

4

Francisco. I am over 18 years of age and not a party to the within action. My business address is

5

558 Capp Street, San Francisco, CA 94110. On the date specified below, I served the attached:

6

**THIRD AMENDED COMPLAINT**

7

on the interested parties by causing a true copy thereof to be deposited in the United States mail

8

at San Francisco, CA, postage fully prepaid:

9

GREGORY M. FOX
BERTRAND, FOX & ELLIOTT

10

The Waterfront Building - 2749 Hyde Street
San Francisco, CA 94109

11

12

MICHAEL J. HADDAD
JULIA SHERWIN

13

HADDAD & SHERWIN
505 Seventeenth Street

14

Oakland, California 94612

15

I declare under penalty of perjury that the foregoing is true and correct.

16

Executed this September 16, 2004, at San Francisco, California.

17

18

/s/

19

20

21

22

23

24

25

26

27

28